**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:   ALEX R. LAWRENCE, SR. and
       JOANN M. LAWRENCE,

                                        Chapter 7
                                        Case No. 10-27803 (RTL)

                Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
ANDREA DOBIN, TRUSTEE

                                        Adversary Proceeding
                Plaintiff,          Case No.11-1430 (RTL)
   v.

ALEX R. LAWRENCE, SR. and
     JOANN M. LAWRENCE,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

STERNS AND WEINROTH, P.C.
Graig P. Corveleyn, Esq.
Attorneys for Plaintiff

Dean G. Sutton, Esq.
Attorney for Debtors/Defendants

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

     The Debtors owned 2,000 valuable points in Disney Vacation Club.  About two months

before filing bankruptcy, they transferred 1,250 points to their son and daughter-in-law.  The

1

Debtors did not disclose the prepetition transfer of points anywhere on their bankruptcy petition, schedules or statement of financial affairs.

The Chapter 7 Trustee did not discover the prepetition transfer of points until after the Debtors had been granted a discharge. The Trustee has sued under 11 U.S.C. § 727(d)(1) to have the discharge revoked as having been obtained by fraud.

Because Mr. Lawrence consciously decided not to disclose the transfer of points, his discharge will be revoked. Ms. Lawrence was not aware of her husband's concealment. Judgment will be entered finding no cause to revoke her discharge.

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(J) for revocation of a discharge.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Alex Lawrence, Sr. and his wife, JoAnn Lawrence, owned and operated a number of greeting card and stationary stores. Two of their sons worked in the business managing individual stores. A few years ago, the business started to deteriorate. Alex, Sr., decided to take another job to earn wages, hoping that business would improve. His son, Alex, Jr. assumed management of all the stores. His meager salary was not immediately increased despite his undertaking greater responsibility; however, his parents promised that when business improved Alex, Jr.'s salary would be increased retroactively.

Unfortunately, business did not improve. One by one the stores closed or were taken over by other operators. Alex Sr. and JoAnn had guaranteed much of the business debt and had used their personal credit cards to keep the businesses going. By August 2009, they consulted bankruptcy counsel and realized they would probably file bankruptcy.

Alex, Jr. stayed with the stores until the last one finally closed in the Spring of 2010. He was able to find other employment and actually started his new job as he was winding down the last store.

Alex, Sr. felt bad that his son had to take on so much responsibility but had not been paid commensurately. The family's resources had all been poured into the business and there was no cash available to pay Alex, Jr. the retroactive salary increase he had been promised.

Alex, Sr. and JoAnn had owned 2,000 Disney Vacation Club points since approximately 1995. The points had been acquired in six separate contracts and were conveyed in six deeds from Disney Vacation Development, Inc. that were recorded in the Florida land records. These points are valuable and trade through a specialized broker. In April 2010, Alex, Sr. and JoAnn decided to give their son, Alex, Jr. 1,250 points because of his management of the stores at an inadequate salary. At the same time, they listed the remaining 750 points for sale at $40,000.

Mr. & Mrs. Lawrence filed a petition under chapter 7 of the Bankruptcy Code on June 10, 2010. On Schedule B, they listed under other personal property "Other Real Estate – Disney Vacation Club" with a value of $40,000. The number of points owned was not specified. The transfer of 1,250 points to their son two months prior to bankruptcy was not disclosed anywhere on the petition, schedules or statement of financial affairs ("SOFA").

In particular, Item 10 on the SOFA entitled "Other Transfers" requires the debtors to "List

3

all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case." The Lawrences checked the box "None". Mr. Lawrence testified that he completed the schedules and SOFA without assistance from Ms. Lawrence except with regard to certain routine household expenses. When Mr. Lawrence read Item 10 of the SOFA he considered whether the transfer of points to his son should be disclosed. He decided that the transfer of points was in the ordinary course of business because his son was promised a retroactive salary increase but had never received it. Mr. Lawrence did not tell his bankruptcy lawyer about the transfer or seek his advice as to whether the transfer qualified for exclusion as in the ordinary course. Mr. Lawrence assured his wife that he had completed the schedules and SOFA. She signed without reviewing them.

   The Chapter 7 Trustee convened a meeting under Section 341(a) of the Bankruptcy Code. The Debtors testified under oath at the meeting and were represented by counsel. In response to the Trustee's inquiry, Mr. Lawrence answered that they owned 2,000 points in Disney Vacation Club that they had listed for sale at $40,000. He said that at one time the points were selling for $100 per point, but at that time he estimated the market value at $50 per point. The Trustee informed the Debtors that she would be selling the points and requested that they provide all documents related to the points. Both the Trustee and her paralegal took handwritten notes of the meeting and wrote 2,000 points.

   Following the Section 341(a) meeting, the Debtors sent the Trustee copies of two deeds, each for 375 points. The Trustee proceeded to list these points for sale with the broker who confirmed their estimated value at $40,000. Neither the Trustee, nor her paralegal noticed the

4

discrepancy between the number of 2,000 points that had been mentioned at the meeting and the total of 750 points in the two Deeds.   Shortly thereafter, the Debtors received a discharge on September 29, 2010.

In November 2010, despite having been explicitly cautioned by the Trustee that she would be selling their points, Mr. & Mrs. Lawrence used the estate's 750 points to take a vacation. During discussions with the broker about the marketing of the 750 points, the Trustee learned that the Debtors had used their points after the § 341(a) meeting that reduced their market value.   On February 1, 2011, the Trustee contacted the Debtors' attorney and demanded reimbursement for the unauthorized use of estate property.   The Debtors paid $1,500 in response to the Trustee's demand.

Also, just after the § 341(a) meeting, the Debtors planned a family vacation with some of their children and grandchildren.   Ms. Lawrence made the arrangements to use the 1,250 points. The family actually took the vacation, using the points, in February 2011.

The Trustee retained an accountant in anticipation of selling the points to estimate the potential tax liability from the sale.   The accountant, in the course of investigating the tax basis in the points, discovered that the Debtors had owned 2,000 points for a long time and had transferred 1,250 points to their son and daughter-in-law two months before filing bankruptcy.   Upon learning of the transfer, on February 22, 2011, the Trustee demanded a return of the points.   The son and daughter-in-law complied with the Trustee's demand.   The Trustee sold the 750 points that the Debtors disclosed for $22,500 and the 1,250 points that had been transferred for $50,200.00.

5

## DISCUSSION

The Trustee seeks revocation of the Debtors' discharge under § 727(d)(1) which provides: ". . . the court shall revoke a discharge granted under subsection (a) of this section if . . . such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1) (2006). Revocation of discharge is an extreme penalty that should be granted sparingly. *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300 (2d Cir. 1996); *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d. Cir. 1993). The Plaintiff bears the burden of proof to show by a preponderance of the evidence that the Debtors committed fraud and that the Plaintiff was unaware of the fraud before the discharge was entered. FED. R. BANKR. P. 4005; *Meisel v. Gratch (In re Gratch)*, 2010 Bankr. LEXIS 2876 (Bankr. D.N.J. 2010). Also, the Plaintiff must prove that grounds exist to deny the Debtors a discharge under §727(a).

**1. Fraud**

By March of 2010, the Debtors were keenly aware that they faced bankruptcy. Their stable of retail stores had shrunken to one, and that was about to close. They had guaranteed much of the business debt that was in default and had used their personal credit cards in a vain attempt to keep the business afloat. Recognizing their predicament, the Lawrences first consulted a bankruptcy lawyer many months earlier, in August 2009.

They also knew they had a valuable asset that had not been tapped, but would be lost to creditors when they filed bankruptcy – the Disney Vacation Club points. Two things occurred: (1) they arranged to transfer 1,250 points to their son and daughter-in-law; and (2) they listed 750 points for sale.

As Mr. Lawrence prepared the bankruptcy petition, schedules and statement of financial affairs, he was mindful of the Disney Vacation Club points. On Schedule B he itemized the points with a value of $40,000, but did not specify the number of points. When he read #10 in the SOFA that requires disclosure of all transfers within two years prior to bankruptcy, he considered whether to disclose the transfer of 1,250 points to his son and daughter-in-law. He decided not to disclose the transfer because he concluded it was in the ordinary course of business. His rationale was that his son had been promised a retroactive pay increase for assuming responsibility for management of all the stores. The business had never paid the son and Mr. Lawrence felt a personal obligation to fulfill that promise. He decided that transferring points to his son and daughter-in-law was satisfying a business debt and did not have to be disclosed. Furthermore, he determined not to seek the advice of his bankruptcy lawyer on this issue and never mentioned the transfer.

There are several badges of fraud. *See Adamson v. Bernier (In re Bernier)*, 282 B.R. 773, 781 (Bankr. D. Del. 2002). The transfer was to close relatives: the son and daughter-in-law. There was no consideration received by the Debtors. Any obligation for retroactive compensation to the son was due from the business, not the parents personally. The Debtors continued to enjoy the points. They went on a family vacation with their children and grandchildren eight months after the transfer. JoAnn Lawrence made the arrangements to use the points.

Whether a transfer is in the ordinary course of business as used in #10 of the SOFA is a legal question. The Third Circuit has opined on the meaning of the term as used in the Bankruptcy Code. *In re Roth American*, 975 F.2d 949 (3d Cir. 1992). Courts apply a horizontal

7

test ("from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry") and a vertical test ("from the vantage point of a hypothetical creditor . . . whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit"). *Id*. at 952-53. In this case, the Lawrences' use of vacation points as currency to satisfy a moral (but not legal) obligation to their child would not qualify as in the ordinary course of business under the Third Circuit's interpretation.

Mr. Lawrence was asked a hypothetical question by his attorney at trial that he was permitted to answer over objection from the Trustee's attorney. He was asked, if the Trustee had inquired as to whether the Debtors had made any transfers within a year prior to bankruptcy, would he have disclosed the transfer of 1,250 Disney Vacation Club points to his son and daughter-in-law? He readily answered, yes he would have. The implication being that he was not hiding anything.

The court draws the opposite conclusion. The fact that Mr. Lawrence would have readily revealed the transfer if the Trustee had asked indicated that he was mindful that the transfer was extraordinary and would be of interest to the Trustee. That reaction is contrary to his conclusion while answering #10 of the SOFA that the transfer was in the ordinary course of business.

The Debtors further argue that if they intended to hide their Disney Vacation Club shares they would have given them all away and they would not have favored one son over their other children. That argument perpetuates the fiction rejected earlier that the transfer was in the ordinary course of business. The rationalization concocted by Mr. Lawrence was part of his scheme to put this valuable asset out of the reach of the Trustee. That he might have structured the transfer in another way does not cause the court to view the transfer and concealment as

8

innocent.

Mr. Lawrence knowingly and intentionally omitted disclosing the transfer of 1,250 Disney Vacation Club points on his SOFA. His purpose was to conceal information from the Trustee regarding assets that she could liquidate for the benefit of creditors. His rationalization that the transfer was in the ordinary course of business is incredible and rejected by the court. The Plaintiff has established that Mr. Lawrence obtained his discharge by fraud. Mr. Lawrence transferred property within a year prior to bankruptcy with the intention to hinder, delay or defraud the officer of the estate and the singing of the SOFA while intentionally omitting information on the transfer constitutes a false oath warranting denial of a discharge under §727(a)(2)(A) and (4)(A).

JoAnn Lawrence is in a different position. There is no evidence that she intended to conceal the transfer. She relied on her husband to complete the bankruptcy schedules and SOFA and signed based upon his assurance that all the information was correct. While she is bound by her signature, there is no reason to conclude that she committed fraud.

**2. Trustee's Knowledge of Fraud**

Mr. Lawrence argues that the Trustee should be precluded from seeking revocation of his discharge because she knew, or should have known, of his omission and concealment before his discharge was granted on September 29, 2010. Specifically, he points to his testimony at the § 341(a) meeting that the Debtors owned 2,000 Disney Vacation Club points, that they were worth $100 per point previously but had declined to a value of $50 per point as of the meeting. At the same time, his Schedule B and testimony regarding listing the points for sale was that the total value was $40,000. Mr. Lawrence argues that simple arithmetic would have revealed the

9

inconsistency, which should have led the Trustee to inquire further into the number of points owned. That is, multiplying $100 per point by 2,000 points yield a value of $200,000 as a previous high. $50 per point times 2,000 points yields $100,000 for the value as of the meeting. That is inconsistent with the listing price and scheduled value of $40,000. Mr. Lawrence argues that the Trustee should have realized that inconsistency and asked about it. Had she asked, Mr. Lawrence now says, he would have revealed the transfer of 1,250 points to his son and daughter-in-law.

Secondly, Mr. Lawrence argues that when he complied with the Trustee's request for all documentation regarding the Disney Vacation Club points, he sent in two deeds, each for 375 points. The Trustee should have noticed that the total of 750 points was less than the 2,000 points he testified about at the meeting and that the Trustee and her paralegal wrote down in their notes.

Under the statute, even a fraudulent debtor will escape revocation of discharge if the plaintiff knew about the fraud before the discharge was granted. This is consistent with the policy favoring a fresh start and denying a discharge sparingly. In fact, the Plaintiff bears the burden of proving that she did not know of the fraud until after the discharge. *In re Puente*, 49 B.R. 966, 968 (Bankr. W.D.N.Y. 1985).

In this case, the Trustee testified that she first learned of the transfer of 1,250 points (from her accountant) on February 14, 2011, four and one half months after the discharge had been granted. Neither the inconsistencies in the price per point verses the scheduled value and listing price that might have been evident at the § 341(a) meeting, nor the discrepancy between the total of 750 points on the two deeds compared with the testimony about 2,000 points were noticed by her until after her accountant discovered the transfer. The court finds as a fact that the Trustee did not

have actual knowledge that Mr. Lawrence concealed the transfer of 1,250 points until after the discharge was granted.

The Debtor argues that the Plaintiff could have, and should have, discovered his fraud before the discharge was granted. The Plaintiff counters that she merely has to prove lack of actual knowledge of the fraud, not what she might have learned through further inquiry.

The majority rule is that a party asking for revocation must have diligently investigated any possibly fraudulent conduct as soon as he or she becomes aware of facts indicating fraud. *Mid-Tech Consulting, Inc. v. Svendra*, 938 F. 2d 885, 888 (8th Cir. 1991); *Lightfoot v. Landry (In re Landry)*, 350 B.R. 51, 56-57 (Bankr. E.D. La. 2006). The minority rule requires actual knowledge, which in this case the Trustee did not have. *In re Dietz*, 914 F.2d 161 (9th Cir. 1990). In light of the policy favoring a fresh start, this court will follow the majority rule.

Assuming that the Debtor could escape revocation of his discharge if the Plaintiff did not actually know of his fraud, but should have known from the facts in front of her, the court finds in this case the Trustee did not have sufficient facts from which she should have known there was fraud or that required further investigation. True, there were inconsistencies between the value of 2,000 points if one did the math at $100 or $50 per point, versus the scheduled value and listing price of $40,000. And the total of 750 points on the two deeds did not match the testimony that the Debtors owned 2,000 points. Nevertheless, when the Trustee engaged the broker to list the Debtors' points on her behalf, he confirmed that the listing price of $40,000 was appropriate. That was consistent with the Debtors' schedules and their testimony about listing price at the § 341(a) meeting. The Trustee's focus on value, rather than number of points, is understandable.

These vacation points are an unusual asset. The Trustee, who has more than twenty years

11

of experience as an attorney and twelve years as a Trustee with tens of thousands of bankruptcy cases administered, has never encountered similar assets before. Exactly what they were, how to value them, and whether they could be sold were all new to her. While in hindsight one could see how the inconsistencies in the facts presented by the Debtors could have been noticed, the court cannot find that the Trustee should have noticed them. Ironically, the Debtors' attorney, who has defended them vigorously in these proceedings, had the same information as the Trustee but never questioned his clients' schedules or testimony at the §341(a) meeting regarding the number of points. He has bristled at any suggestion that he was complicit in his client's concealment, and the court finds no reason to question the attorney's conduct in any regard. To the contrary, he, like the Trustee, assumed his clients were proceeding in good faith. It was only after the discharge had been granted that he realized his clients had not been completely honest with him. At that point, he cooperated fully with the Trustee and quickly facilitated the return of the transferred points.

Lastly, Mr. Lawrence faults the Trustee for not specifically asking him at the § 341(a) meeting if he had made any pre-bankruptcy transfers. He points to the Handbook for Chapter 7 Trustees published by the United States Trustee that recommends "when deemed appropriate", that trustees ask debtors if they have transferred any property within a year prior to bankruptcy. At trial, Mr. Lawrence said that if the Trustee had put that question to him, he would have revealed the transfer of 1,250 points. This is like blaming the victim for the crime – like a thief complaining that if the victim had not left her wallet visible from her coat pocket, he would not have robbed her so easily. Mr. Lawrence's argument in this regard is rejected.

### 3. Post-Petition Use of Points

The Trustee contends that the use of 750 points by the Debtors to take a vacation after the § 341(a) meeting is grounds to revoke their discharges. She argues that this was a transfer of estate property after bankruptcy within the meaning of § 727(a)(2)(B). There are two problems with the Trustee's argument. First, this is a proceeding to revoke a discharge under § 727(d)(1) that requires proof of fraud. There is no proof that the Debtors' use of their points post-bankruptcy was fraudulent. Second, even if § 727(a)(2)(B) applied, that requires proof of intent to hinder, delay or defraud the Trustee. No such proof was presented.

### **CONCLUSION**

The court recognizes that revocation of discharge is a harsh remedy, especially where the Debtors are liable on millions of dollars of debt related to their failed business. Nevertheless, the Plaintiff has proven that Mr. Lawrence intentionally concealed the pre-bankruptcy transfer of 1,250 valuable Disney Vacation Club points on his sworn statement of financial affairs. This constitutes fraud of which the Plaintiff was unaware prior to the granting of the discharge. Mr. Lawrence's discharge will be revoked.

Ms. Lawrence, though she signed the same statement of financial affairs, relied on her husband's assurance that he had fully completed it, and she was not aware that the transfer was concealed. There is no cause to revoke her discharge.

Dated: January 9, 2012             **/S/Raymond T. Lyons**
                                   United States Bankruptcy Judge